Good afternoon, Illinois Appellate Court. First District Court is now in session. The First Division, the Honorable Carl Anthony Walker presiding. Case number 1-9-0-9-8-5. In re the commitment of Vincent Pierroni. Pierroni. Okay, and good afternoon everybody. Good afternoon, Your Honor. Okay, I'm Justice Walker and I have with me today Justice Hyman and Justice Coughlin on this panel. And I'd like to have you all introduce yourselves at this time. For the appellant, Vincent Pierroni, Michael Johnson. For the people, Assistant Attorney General Alistair Whitney. Thank you both. And let's start with you, Mr. Johnson. How much time do you need today? I'm anticipating 12 minutes for argument and three minutes for rebuttal, if I may. You sure may. We generally allow a total of 20 minutes. So you're saying you don't need 20 minutes, correct? I can take more time depending on the amount of questioning. Sure. Sure. Okay. All right. And Mr. Whitney, how much time do you need?  That's fine. Also, depending on the questions. Sure. And if you run out of time because of our questions, we're pretty liberal. If we cause you to run out of time, we will allow you to make an important point that you really, really wanted to make to us. If you're not don't have an opportunity to get to it because the justices are not giving you the opportunity to argue. We generally will allow you to get to that one point. So with that, we will get started. Mr. Johnson, may it please the court and counsel. Vincent Peroni has been committed under the Sexually Violent Persons Commitment Act for over 14 years since 2006, without ever having an evidentiary hearing to determine whether he is still a sexually violent person or whether he ought to be conditionally released. In 2016, he obtained an evaluation report from Brian Abbott, a qualified expert under the Sexually Violent Persons Act, that wherein Dr. Abbott opined that Mr. Peroni was no longer a sexually violent person, and that even if he was, that he ought to be conditionally released under the statute. Mr. Peroni has been denied the opportunity to present that evidence. He's been denied the opportunity to cross examine and challenge the state's evidence. And he's been denied an opportunity for a fact finder to hear that evidence and weigh it against the state's evidence and determine which one of those things ought to support the judgment. We're asking this court to reverse and remand for a discharge hearing or a conditional release hearing. We are not asking for the court to outright discharge him or to conditionally release him at this stage. We're simply asking for a hearing. Mr. Johnson, just for purposes of clarification, Mr. Peroni, for a large chunk of that 12 years, never sought a probable cause hearing, right? That's correct. He did not seek one. However, there are annual reexaminations that are required under the statute. And for each one of those annual reexaminations, there was no evidentiary hearing for Mr. Peroni. The standard of review on both of these issues of whether there is probable cause to believe that he should be discharged or conditionally released is de novo. And the standard of proof of probable cause is a low standard as defined by the Illinois Supreme Court in the Hardin and Stanbridge decisions. And we submit that Mr. Peroni has met that low standard for both discharge and conditional release. How would you characterize the meaning of a low standard? How do we determine this meets that low standard? From guidance from the Hardin case, the Stanbridge case, and the two appellate court cases that we've cited of Rendon and Kelly, in looking at the low standard, there are a few points of guidance from those cases. The first is that Mr. Peroni need only establish a plausible account that he is either no longer mentally ill or no longer dangerous as defined by the act. And under Stanbridge, the court is tasked with considering whether there's been some sort of changes since the initial commitment that support that. In other words, not allowing a respondent to relitigate issues that were decided at a previous trial. Now, in Mr. Peroni's case, he did not have a trial. He stipulated to his status as a sexually violent person. But I think it's still fair to use that 2006 date of his commitment to gauge whether there's been changes since that date. The other component of this low standard is that it does not permit the court to choose among competing facts or inferences. So although before the court is also a reexamination report from the state's witness, that reexamination report cannot be used to choose conflicting facts or opinions over the ones that were presented by Mr. Peroni. In addition, the low standard here is intended to be preliminary in nature because, again, this is not an ultimate determination of whether Mr. Peroni should be discharged or conditionally released. It's simply whether he should have a hearing. And I'm also prepared to address the other issues presented in this case concerning jurisdiction. So do you believe that the standard is that the only thing that must happen is that a hearing must be requested and there must have been some treatment prior to that hearing being requested? No, actually, I disagree with that part about treatment. And also, I don't think the statute requires a specific request for a hearing. So there's two, if I could explain that answer in a little more detail. The first point, as far as treatment, in redetention of Leroy Kelly from this court, a different panel in 2019, found probable cause for the person to be discharged, even though he did not have any treatment. So treatment is not required for discharge. And it's also not required under the statute. And with respect to the request for a hearing, the statute under Section 65 requires an annual reexamination and essentially requires a very limited hearing each year that a person does not make a request. So under 65B, if a person does not request a discharge hearing, but also does not waive one, then the court engages in essentially a review of the report or reports, if there are more than one, and has a hearing based on those reports and then considers argument from counsel. So there does not need to be a request. In fact, in the case of Henry Commitment of Rendon from 2017, that is precisely what happened. That case, the committed person did not petition for discharge. He merely relied on the state's report and pointed to deficiencies in that report that justified, and also positive facts in that report, that justified a finding of probable cause for discharge. And it was indeed remanded for a discharge hearing. So that is essentially the same scenario on which this case presents, because Mr. Peroni did not affirmatively file a petition for discharge, yet the court was bound to, and indeed stated that it did, consider all of those issues and found that there was no probable cause to believe that Mr. Peroni was no longer a sexually violent person. So the issue of treatment only comes up at the actual hearing, rather than at the decision whether or not there will be a hearing. If you have several reports, and none of the reports state that the petitioner is no longer a sexually violent person, then what would be the basis for even going forward with the hearing? If there's no report that states that there's any possibility of that finding being made. And that's precisely the facts that were presented in the Rendon case, and the issues in that case were challenging the actuarial instruments that were relied upon by the expert witness, and that this person's score in that case was extremely low. The person had been in a substantial amount of treatment for almost 20 years. The person had been aged significantly during that time period, and the age, there was research showing that persons who are over the age of 60, and even further, continue to have declined rate of recidivism. And so all of those points, while they were in the report from the state's witness who said, you know, this person is still a sexually violent person, those facts and those issues could have also supported the opposite finding. And that was the basis of probable cause for that case, because the report could be meaningfully challenged. But in this case, Mr. Peroni actually has affirmative evidence from Dr. Abbott that he was denied from presenting at a hearing, saying that he was no longer a sexually violent person, and even if he was, that he ought to be conditionally released. And so the topic of treatment is addressed in Dr. Abbott's report and is fairly considered. The respondent, while he has not made significant gains in terms of the nominal treatment program, he has made sufficient progress in treatment. That's on an individualized consideration and an individualized basis for him. When you consider, if we switch over to the topic of probable cause for conditional release, the statute requires a showing that the person has made sufficient progress in treatment to the point that they are no longer substantially probable to engage in acts of sexual violence, if on conditional release. And so there's really three components of evidence that weigh into that decision, not just the treatment, but also the conditions of release and the risk. I'm quite frankly a little bothered by his lack of significant progress in treatment. So how does that not matter in this case? Well, it doesn't matter at this stage, because this is simply a probable cause stage, and it's about whether he can have a hearing to see whether a fact finder would be equally bothered by that or not. And it's true that there may be a hearing and the hearing may come back and say that he should not be conditionally released and he is still a sexually violent person, but that is what is called for under the statute, not to shortcut that hearing before it happens. So as far as the specific treatment that he's had in this case, Dr. Abbott describes that in his report and concludes that when it's in combination with his age, in combination with the psychotropic medication that he's taking, that Dr. Abbott found that that level of treatment that he did receive was sufficient to meet the standard. Is he now 54 years old? Did I add that up correctly? Yes, I believe he is currently 54 years old. The other thing that was a little unusual in this case is the fact that one judge said he could have a hearing, but yet it never happened. What was that all about? Well, the first judge who reviewed the petition for conditional release did find that there was probable cause for conditional release. That hearing was delayed on several occasions relating to unavailability of counsel or the expert witnesses. In one case, in one of the continuances, trial counsel was ordered to a trial where there was a demand for trial and the hearing had to be continued. But was Mr. Perrone that had requested the continuances? Well, yes, through his lawyers, yes. Okay, I just wanted to clarify that. Thank you. There really was no basis in the law for another judge to go back and overrule that. Well, I thought that there is precedent for that, I thought. I don't, I think that there, well, let me say this instead then. The issues presented here were already at a de novo review and already at a, the question of being, is there a probable cause? So if we were to go back and analyze and try and say that the second judge was an error, the question would still come back around to, is there a probable cause? And should there have been a hearing? So we're already sort of at that point. But that's still the issue, whether the second judge was correct or not. The issue doesn't change. That's correct. Thank you. The issue is the same. But I think what Justice Cogman was saying is that there is, there's case law that supports that a second judge who a case has been assigned to can change an order that has been previously entered in the case. I agree with that. Thank you. The, with regard to certain information that came out of respondent, specifically the fact that he had recently said that he had some fetishes he needed to deal with, and that he wasn't ready to transition to disclosure group. How, with regard to the low threshold here, how is a judge to consider those facts in light of that standard? Because it seems that the judge could take account of those admissions. I think that the issues relating to the, specifically, he was saying that he's not wanting to go into a group and talk about his prior offenses or hear other people talking about their offenses. And while that may be something that the state ultimately points to at a full hearing, interpreted those facts ought to be, that is how the judge and this court ought to consider that evidence as being one. That's what I'm hoping to do now. I'm hoping that Dr. Abbott interpreting those facts is saying that he has developed a level of victim empathy, and through this psychotropic medication treatment that he has received, that he has experienced changes in the way that he views his sexual offending, even if he did not go to disclosure group and talk about the offenses with other sexually violent persons. So, at this stage, I don't think that it should be something that overrules finding a probable cause, based on the opinion of Dr. Abbott. Go that route. I mean, it seems to me, then, what were we saying with regard to this case? What is the rule that comes out of it? It seems that you're advocating rule that where we do have two reports from evaluators, and they differ, then we should have a hearing. It doesn't matter if there's other information there for the judge to consider or not. I mean, did you just focus on those reports? That's what you're saying. Just focus on the reports of the evaluators, rather than anything else. Isn't that the bottom line, what you're saying? Well, yes, and that's really all you can, at a petition for conditional release, you can't call witnesses to testify. It's always going to be a report review. And so, the rule, I would say, I think that saying that just because there's two experts who have different opinions, that that's not enough to understand bridge. based on changes that have been identified, not simply on going back and trying to relitigate something that a finder of fact already heard, then yes, there should be finding a probable cause. So, what you're saying is, if the report, at least one report shows changes, and the other report does not, then you have met the low threshold. Yes, provided that, yes. And the other, I think, important rule that could come out of this court's decision is to look at the totality of the person and not just be focused on whether the person is in a specific phase of treatment. The state has urged this court to look at the case of Smego, where they found that person was in phase two and that there was no probable cause based on that. But the statute does not require any specific phase. It specifically directs the court to consider the totality by saying, you need to look at the person's past and present mental status, at their past sexually violent behavior, and what are the opportunities available for treatment. And so, when you consider, and when Dr. Abbott considered the totality of this evidence for Mr. Peroni, although he did list the number of treatment groups, and although the disclosure group was not one of those that was completed, Mr. Peroni did complete several other groups that have contributed to his progress in treatment. And when that combines with the reduction in risk associated with aging and with the psychotropic medications, there is probable cause in this case. But isn't that exactly what the court held in Kelly, basically? That was the same situation. The court said that you are right. And I think this court should follow Kelly, yes. I agree. You're not asking us to do anything that the court hasn't done in Kelly. That's correct. That's correct. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. You're welcome. Mr. Whitney, please. Thank you, Your Honors. Good afternoon, Your Honors. Counsel may please the court. My name is Alistair Whitney, Assistant Attorney General on behalf of the people. Your Honors, I would just like to address some things that the counsel made in his opening argument. First, I just wanted to clarify that although treatment is not required by statute or case law at the probable cause stage, it can go to the changed circumstances and the plausibility of those changed circumstances. So although it is not required, it can be one of those factors that can show changed circumstances. And also, I did want to just clarify as well that, of course, a trial judge has broad authority to revisit an earlier ruling, including final judgments and interlocutory rulings. And that is set forth by the Illinois Supreme Court's decision in People v. Mink. Now, I wanted to touch briefly on the standard that guides this court's analysis here today. And that is a standard that was announced under this court, Illinois Supreme Court's decision in In Re Commitment, a detention of Stanbridge. And there, the court held that a sexually violent person must present a plausible expert opinion of changed circumstances, such that the person is no longer a sexually violent person or that he has made sufficient progress through treatment. This plausibility standard, unlike the credibility standard that is appropriate at the evidentiary hearing stage, is an objective standard that requires a sexually violent person to present sufficient evidence supporting the plausibility of the account. Does Dr. Zabit's report suffice for that purpose? Your Honor, I would say that Dr. Zabit's report does not establish the plausible account of changed circumstances. And for example, Dr. Zabit's report outlines some of the comments that a respondent made to him during their July 19, 2016 interview. For example, a respondent claimed that he had not masturbated in over three years, but Dr. Zabit noted that that information appeared to be contradicted by other information that he told a staff psychiatrist at the treatment and detention facility. I mean, so what? What does that have to do with the total report, where the total report shows a difference of opinion between him and the other evaluator? Well, Your Honor, it goes to the plausibility of his report because... Is that one factor? How does it go to the plausibility? I don't understand that. Just because he discounts that, so what? I mean, where's the plausibility of the total report? You're picking out one small, minuscule, probably not very important point. Well, Your Honor, I was also going to say, too, that on the day of his interview with Dr. Zabit, he was found to be in possession of this cache of pornographic material. And so when Dr. Zabit asked him, hey, are you viewing any sexually stimulating material involving force or non-consent? And respondent replied that he had not. And then Dr. Zabit writes this report and acknowledges that he is receiving information that he knows to be inaccurate or untruthful that cannot establish a plausible account because it is simply not in line with the record evidence. Mr. Whitney, wouldn't those inquiries be more appropriate at the hearing stage? I mean, actually, aren't we bound to accept the credibility of the experts at this stage? And then all the things you're bringing up, wouldn't those be more appropriate for the actual hearing part of this process? We are bound. Yes, Your Honor, we are bound to accept the credibility of the report's authors at this stage. However, to establish the plausibility standard and to prove that, although it is a very low standard, if the expert relies on information that he knows is not true and then arrives at an opinion saying, based off of that information that he knows to be untrue, says that respondent is entitled to an evidentiary hearing on the issue of discharge or conditional release, it's just simply not... material to the decision. Are you following? But maybe, I think, when you look at it, Dr. Abbott knew, he says, you know, that he questioned it, and he doesn't believe it. So he puts that in his report. So I don't know, he acknowledges it. And yet, even acknowledging it, his report is much contrary to the other doctor's report. So, you know, I really don't understand how that follows. Your argument follows when the doctor is well aware of that which you say somehow makes this low burden unattainable. Well, yes, Yadar, but for him to rely on that information and acknowledge it, as you said, and then to conclude on that information and notwithstanding his acknowledgement that respondent is eligible for an evidentiary hearing on the issue of either discharge or conditional release... Was that the only information you relied on? Just those two things? No, no. No, not at all. So he looked at the totality of information, you know, and you're just putting your finger on two points where Dr. Abbott even said, you know, I don't even think that this is true. So, again, I question the premise of your argument. Well, Your Honor, yes, of course, Dr. Abbott's report contains other information that supports or that he claims supports his conclusion that respondent is entitled to an evidentiary hearing. But it is the state's position that when he relies on that information, it just undercuts the plausibility of his conclusions that respondent is eligible for an evidentiary hearing. But it would undercut if he didn't acknowledge it. But the fact that he acknowledges, I don't see how you undercut it. I think if somebody says something to you that you know not to be true and you acknowledge, yes, I know that not to be true, then how does that undercut it? Well, and then for him to then go on, Your Honor, and say, yes, I acknowledge this not to be true, but keeping that in mind to then conclude on the basis of that information in part... You even said, not that information, the totality of the information, all the reports, all the studies, everything that happened, that, again, you can't just take those two statements, which he acknowledges, and make that the whole case, can you? No, Your Honor, and we're not saying that that is our whole case. It's just that it does undercut the plausibility of his conclusions as to whether a respondent is entitled to an evidentiary hearing. Why should we not follow Kelly? Pardon? Why shouldn't we follow Kelly? Well, Your Honor, Kelly is distinguishable because the respondent in that case had some decreases in... Cancer? Yes, Your Honor. Didn't they come out with that decision before they knew of the cancer? I'm not sure, Your Honor, but that did play a role in the court's decision and finding that because respondent had decreased psychosexual functioning due to the cancer and his treatments that that made him, and he was also significantly older. I believe he was in his mid to late 60s, whereas respondent here at the time of his interview was only 50 years old. And that goes to respondent's argument that he has aged out of his pedophilic disorder because of accompanying changes in judgment and impulse control. Dr. Abbott noted, in addition, the other information that respondent has had an exhibited poor behavioral adjustment while at the treatment and detention facility. In Kelly, Abbott did his report before they knew of the prostate cancer. So it had no effect on his report. Yes, but ultimately the court did find, Your Honor, that respondent in that situation with his cancer and that treatment so affected his psychosexual functioning that he could establish that plausible account. So you're saying that Kelly depended on the fact that he had prostate cancer? Is that your conclusion from Kelly? No, Your Honor, but that was, I'm sorry, what was the last part, Your Honor? That you think Kelly turns on the fact that he had a loss of sexual function due to the prostate cancer. Is that what the case turns on? It does not turn on that, but I think that was an important factor in that case, Your Honor. But Dr. Abbott's report also notes other information such as respondent's violent outbursts towards both staff and residents at the treatment and detention facility. He's been involved in numerous physical altercations with staff and residents in his time there. And so that does not show good judgment or impulse control, including a recent, in March of 2016, outburst that was directed towards TDF staff. Isn't that all for the hearing? No. Because, again, we have these competing reports and the reports are very different with regard to their conclusions. And they're both, you know, why can't we say they meet the low standard? Again, I don't, I mean, you're going to say it's all plausibility, but do you have any other answer other than that? Well, Your Honor, I would say to help resolve this, you know, plausibility is what can be believed, right? Versus credibility, what we actually believe. And that credibility standard is, of course, more appropriate at the evidentiary hearing stage. That respondent, that Dr. Abbott says respondent has exhibited poor behavioral adjustment at the TDF, that he cannot comply with the restrictions of treatment, even in a controlled setting, that he has been caught with this cache of rape, violent rape porn, that he was kicked out of 14 out of 20 ancillary therapy group sessions that he has attended from 2006 to 2016. And then for him to arrive at the conclusion. I got to stop you because we're not talking about 2006 to 2014. We're, you know, people change. And that's why there's a every, isn't it true? And that's why every year, there has to be another evaluation. That's the purpose. People change over time. So, you know, going back in history, isn't what's involved here. We got to look at the individual at this time. Isn't that true? Yes, Your Honor. Absolutely. And the individual at this time respondent has not progressed past phase two of treatment. He has told Dr. Abbott that he is simply not ready to begin sex offender specific treatment. I think you're making the argument at the hearing. Why wouldn't you make that argument at the hearing? Well, I, again, Your Honor, I would, I would say that that just goes to the plausibility of Dr. Abbott's reports, all of these bases of information here. And that's what the Illinois Supreme Court has announced under Standbridge that he must present a plausible expert opinion. And if any time a respondent was able to point to, you know, advanced age and a favorable expert opinion, then that would render the first stage, the plausibility stage at the probable cause hearing to be moot. That's not what the Illinois appellate court said it in my commitment to SMAGO. That court said that even progressing to phase two of treatment is not enough. That's not what the court said in my commitment of Sandry that even completing substantially up to phase four of treatment is not enough to establish probable cause. In this, in tandem with all the other information that Dr. Abbott noted in his report that respondent is not ready, that when he asked, for example, whether, why this court should be concerned, shouldn't be concerned, rather, of his conditional release or discharge in the community, respondent answered, I'm 50 years old and I'd like to move to the Bahamas. It just doesn't go to the plausibility of Dr. Abbott's conclusions that this person who cannot even comply with the requirements of treatment in a controlled, secured facility can somehow do this out in the real world on his own. And he also needs that treatment to be unconditional release and he is unable to do that even in the controlled setting here. And so, with these things in mind, noting that in Dr. Abbott's report that he noted this and that he still nonetheless arrived at those conclusions, it is just the state's position that it just undercuts the plausibility of his findings. And there is a reason that case law and the statute calls for that low threshold, and it is simply because he must, you know, make his opinion based off of facts that is consistent with the record. And if those opinions are based off of inconsistent facts or facts, rather, in the record that is inconsistent with that opinion, we would say that it undercuts the plausibility of his report. And last, Your Honors, so just to be clear, on the issue of discharge, his arguments that he has aged out of his pedophilic disorder, that he has made sufficient progress through treatment, or even that there has been, you know, recent changes in professional knowledge all failed to establish this plausible account. And for many of the same reasons on the issue of conditional release, which of course requires that he present a plausible expert opinion of sufficient progress through treatment, the fact that he is just not able to do that, and in his own words, he is not ready to do that, severely undercuts the plausibility of his report that Dr. Abbott says that he is now ready to do that. And so, accordingly, he has failed to establish a plausible account that he has made sufficient progress through treatment such that he would be entitled to an evidentiary hearing on conditional release. And last, Your Honors. You say all of that, and Kelly says that based upon the one report, even though there's conflicting reports, Kelly says that the report indicates the experts substantially disagree over several issues, but that they will not weigh conflicting evidence and choose between expert reports at this point in the report. And so, in conclusion, I would say that based upon the one report, we conclude the respondent has provided at least the relatively low quantum of evidence necessary to support the probable cause. I think what both Justice Hyman and Justice Coughlin have asked you, and I'm asking the same question, what is it about Kelly that we should ignore? Your Honor, Kelly... Both justices have already answered your question regarding the distinction, and I know your distinction is that Kelly was suffering from prostate cancer, but that information was learned after the doctor issued the report. Yes, Your Honor, and I would just say to your question that the important standard to remember here is the one that was announced in in-rate detention at Stanbridge, and whether there might be a different Illinois appellate court decision finding otherwise for a different respondent, a different sexually violent person, I think, you know, that may go to respondents' argument, but the important thing to remember here is just simply that under the Illinois Supreme Court's decision, this court is bound by the precedent of that court, the Illinois Supreme Court, and that when he has failed to establish this plausible account based off of information that he knows is problematic and inaccurate or untruthful, and then arriving at that decision saying, notwithstanding him saying he is not ready for treatment, notwithstanding his poor behavioral adjustment, notwithstanding his inability to comply with even the restrictions and settings of controlled treatment in this controlled setting, he is... But as Justice Coughlin said earlier, aren't those issues for the hearing? No, Your Honor, because this is simply based off of the information provided in Dr. Abbott's report. The state has not, in this argument, presented any information from Dr. Weidel's report, which does contain conflicting inferences and opinions regarding respondents' status as sexually violent person. And if this court chooses, it can weigh the credibility of those experts, it can weigh the inferences made therein, the observations made by those experts at the evidentiary hearing. But at this stage, although it is a low threshold, we are just pointing to the issues solely contained within Dr. Abbott's report. And when he, again, relies on information that's untrue or inaccurate and still arrives at a conclusion that is not adequately supported by that information, it is the state's position that he has not done enough to even get to that low threshold. Your Honors, I just wanted to briefly address in closing respondents' final argument that his continued... challenging the constitutionality of his continued commitment without an evidentiary hearing, that argument is foreclosed by the Illinois Supreme Court's decision in Wright Detention at Stanbridge and the United States Supreme Court decision in Kansas v. Hendricks. And if there are no further questions, the people request that this court affirm the finding of no probable cause by the trial court. Thank you. Thank you, Mr. Whitney. Mr. Jessen? Thank you, Justice Walker. I have just three points in rebuttal. The first is that there's... the state is suggesting that Kelly somehow misapplied Stanbridge but has not explained that in any way. It's not contained in their brief and they did not explain how that was misapplied here during the argument. The second is that the... Aren't they saying that the facts here are very different than Kelly? And there's information in Abbott's report here that wasn't in the report by Abbott in Kelly. And that supplies a difference. They're looking at the report itself. And that is what they've argued in their brief, which is that the prostate cancer and radiation therapy was significant. But in paragraph, excuse me, paragraph 65 and 66 of the Kelly decision, they make clear that they had made a finding of probable cause based on the first appeal. And then in paragraph 66, they turned to the appeal of the 2017 decision, which is where the eight weeks of radiation therapy and the effects of the radiation therapy came in on that second appeal. And the case had those two appeals consolidated. So it's not distinguishable on the facts either. This court should follow Kelly. The final issue is that in the time since Mr. Perrone has been committed, one of the biggest changes has been through this actuarial risk assessment and the development of these instruments. And his score back when he was committed led to a conclusion that there was about a 33 to 40% chance of recidivism for his score. And then based on the review and the evaluation that Dr. Abbott did, that recidivism rate at the time of the report was between 11 and 12%. So you have between one third to one quarter as much risk. And that is what is significant in terms of evaluating the amount of treatment that's necessary. That's why it's important to have a totality of the circumstances and totality of the facts, because it's not just treatment, but it's treatment and risk level. And how much treatment does this person need to get below the substantially probable level? And that's why you cannot have a blanket or bright line rule about a certain phase of treatment. And for those reasons. Let me ask you one last question. Can you respond to Mr. Whitney's argument about the plausibility of the expert opinion? I mean, his whole argument has to do with the plausibility that the court should look at the plausibility of Dr. Abbott's report. How would you respond to during this oral argument? Dr. Abbott, his opinion is plausible. He's cited on numerous research articles relating to the changes in age, the changes in treatment and the effects of those things. As far as pointing to specific instances where Mr. Perrone said something to Dr. Abbott, where there was contradictory information in a record, that is not something that goes towards the plausibility of his opinion. And he did, in fact, put that into his report. Had he omitted that or had he not known about that, that could be conceivably be something that the state could point to and say, look, he doesn't have all the facts, but that is not the situation. And to say that Dr. Abbott is relying on the untruths is to ignore the totality of the report, because Dr. Abbott is clearly relying on things that he specified throughout the 39 pages of his report, not just one statement saying that he has not been masturbating or that he has not viewed pornography. And those were not reasons that he put in his report as being the sole reasons or even any reasons why he, Mr. Perrone, is no longer a sexually violent person. Instead, he has identified all of the changes in professional knowledge, all the changes in the risk assessment, the changes associated with his increasing age and the treatment and concluded, plausibly, that Mr. Perrone is no longer a sexually violent person. And to the extent that the state wants to point out those sorts of contradictions, that is a matter for a full hearing. And we would ask the court to reverse and remand for such a hearing. Thank you. Okay, thank you, Mr. Johnson. Thank you, Mr. Whitney. Excellent job to you both. Excellent briefing, excellent argument. We appreciate that. We love excellence. So, with that, this hearing is adjourned. Thank you.